Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| BANCO POPULAR DE PUERTO RICO<br><br>Demandante - Apelante<br><br>v.<br><br>MISAEL SANZ TRONCOSO<br><br>Demandado – Apelado | KLAN202400856 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2023CV07671 (1003)<br><br>Sobre:  Acción Civil de Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de octubre de 2024.

El Tribunal de Primera Instancia ("TPI") desestimó, por las alegaciones, una acción sobre cobro de dinero en conexión con la utilización de una tarjeta de crédito.  Según se explica en detalle a continuación, concluimos que erró el TPI, pues la demanda claramente expone una causa de acción viable.

I.

En agosto de 2023, el Banco Popular de Puerto Rico (el "Banco") presentó la acción de referencia, sobre cobro de dinero (la "Demanda"), en contra del Sr. Misael Sanz Troncoso (el "Deudor").  El Banco alegó que el Deudor "solicitó y se le aprobó [una] Cuenta Rotativa Master Card #5310-5059-2138-7074, con Banco Popular de Puerto Rico, en la que el demandado podía obtener bienes y/o servicios de cuando en cuando", así como "adelantos en efectivo[,] y pagarlos de acuerdo a los términos del estado de cuenta".

El Banco alegó que el Deudor "realizó compras y/o obtuvo adelantos en efectivo", pero que había "incumpli[do] con su pago correspondiente" y, así, "adeuda[ba] a la parte demandante … $31,592.82".  Se planteó que dicha cuantía estaba vencida y era

líquida y exigible. El Banco solicitó al TPI que le ordenara al Deudor satisfacer la suma adeudada, $3,159.00 de honorarios de abogado, más los gastos y costas del litigio. El Banco acompañó copia de un estado de cuenta de la tarjeta de crédito, a nombre del Deudor, en el cual se refleja el balance indicado.

En noviembre de 2023, el Deudor presentó una *Moción de Desestimación* de conformidad con la Regla 10.2 (5) de las de Procedimiento Civil, *infra* (la "Moción"). En lo pertinente, arguyó que el Banco no expuso una relación sucinta y sencilla que demostrara que tiene derecho a un remedio, pues sus "contenciones medulares ... adolecen de vaguedad, imprecisión, claridad [y] falta de especificación sobre el tiempo y el lugar".

El Banco se opuso a la Moción; planteó que el Deudor "tiene conocimiento de la fecha y lugar de los créditos reclamados, ya que se le notifica mes a mes". También sostuvo que, en el descubrimiento de prueba, se le había entregado "toda la información sobre lo alegado".

Unos días luego, y en cumplimiento con una orden del TPI, el Banco sometió un documento relacionado con la deuda reclamada, el cual incluye ciertos récords suyos sobre la solicitud de la tarjeta de crédito por el Deudor y el trámite realizado por el Banco al respecto.

El Deudor replicó; arguyó que el Banco no había sometido "evidencia de cualquier contrato y/o la alegada solicitud para la apertura de la cuenta rotativa".

El 19 de agosto de 2024, el TPI notificó una *Sentencia* (la "Sentencia"), mediante la cual desestimó la Demanda con perjuicio. El TPI razonó que el Banco no había demostrado que el Deudor realmente hubiese solicitado la tarjeta de crédito objeto de la Demanda (la "Tarjeta"), ni que la cuneta objeto de la Demanda realmente existiese. También expuso que el Banco no había

probado los términos y condiciones del contrato objeto de la Demanda, "incluyendo la identificación, fecha y el consentimiento a las mismas". Por tanto, concluyó que el Banco no había probado "los elementos esenciales de objeto, consentimiento y causa".

Inconforme, el 18 de septiembre, el Banco presentó el recurso que nos ocupa; formula el siguiente señalamiento de error:

> Erró el Tribunal de Instancia al desestimar la demanda en cobro de dinero al resolver que la misma no exponía una reclamación que justificase la concesión de un remedio bajo el razonamiento de que la misma adolece del defecto intrínseco de no contener los elementos esenciales de todo contrato que resultan indispensables para la existencia de una obligación y, además, que la Solicitud de Línea Rotativa Por Demandado no establece una relación entre las partes ni respalda la exigibilidad de la relación contractual alegada.

El Deudor presentó su alegato en oposición. Arguye que, del récord bancario sometido al TPI, no surgían los "hechos básicos mínimos que justificar[í]an la concesión de un remedio". Planteó que el Banco "tenía la obligación de presentar toda la evidencia pertinente … y no lo hizo, a pesar de haber sido advertido". Resolvemos.

II.

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone varios supuestos en los cuales una parte demandada puede solicitar la desestimación de una acción en su contra antes de presentar la contestación a la demanda. *Aut. Tierras v. Moren & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); veáse, además, *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005).

En lo pertinente, la Regla 10.2 (5) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), establece que:

> Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación… se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes

defensas pueden hacerse mediante moción debidamente fundamentada:

…

(5) dejar de exponer una reclamación que justifique la concesión de un remedio.

A los fines de disponer de una moción de desestimación, **el tribunal está obligado a dar por ciertas y buenas las alegaciones fácticas de la demanda**. *Torres Torres v. Torres Serrano*, 179 DPR 481, 501 (2010); *Perfect Cleaning Service, Inc. v. Centro Cardiovascular*, 172 DPR 139, 149 (2007); *Colón Muñoz v. Lotería de Puerto Rico*, 167 DPR 625, 649 (2006); *García v. E.L.A.*, 163 DPR 800, 814 (2005); *Harguindey Ferrer v. Universidad Interamericana*, 148 DPR 13, 30 (1999); *Ramos v. Marrero*, 116 DPR 357, 369 (1985).

Esto obedece a que el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Torres Torres*, 179 DPR a la pág. 501; *Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569 (2001); *Dorante v. Wrangler de P.R.*, 145 DPR 408, 413 (1998).

Ahora bien, una moción de desestimación al amparo de la Regla 10.2 (5), procederá si el TPI determina que, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es insuficiente para constituir una reclamación válida. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera, et al.*, 184 DPR 407, 423 (2012); *Colón v. San Patricio Corp.*, 81 DPR 242, 266 (1959).

En otras palabras, el promovente de la moción de desestimación tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. *Rosario v. Toyota*, 166 DPR 1, 7 (2005); *Pressure Vessels v. Empire Gas*, 137 DPR 497, 505 (1994).

Ante una moción de desestimación, hay que interpretar las alegaciones de la demanda conjunta, liberalmente y de la manera más favorable posible para la parte demandante. *Rosario*, 166 DPR a la pág. 8; *Dorante*, 145 DPR a la pág. 414. Así pues, la demanda no se desestimará a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Rosario*, 166 DPR a la pág. 8; *Pressure Vessels*, 137 DPR a la pág. 505.

III.

Las cuentas rotativas, y los contratos de venta al por menor a plazos, se encuentran reglamentados por la Ley Núm. 68 de 19 de junio de 1964 ("Ley 68"), según enmendada, 10 LPRA sec. 731 *et seq.*, conocida como *Ley de Ventas a Plazos y Compañías de Financiamiento*.

El Artículo 401 de la Ley 68, reglamenta lo referente a la extensión de crédito bajo un Plan de Cuenta Rotativa para Uso de Tarjeta de Crédito. Dicho artículo dispone lo siguiente:

> Un emisor de tarjeta de crédito podrá extender crédito y cobrar cargos por financiamiento bajo un plan de cuenta rotativa para uso de una tarjeta de crédito en el cual:
>
> (a) El emisor de la tarjeta de crédito permite que el portador realice transacciones periódicamente;
>
> (b) un cargo por financiamiento o una razón de interés es computado de tiempo en tiempo sobre el balance adeudado por el portador;
>
> (c) **el emisor deberá rendir mensualmente al portador estados de cuenta si existe algún balance en la misma o si se ha efectuado transacciones en dicho período**;
>
> (d) el balance adeudado según dichos estados será pagadero en una fecha específica según establecido entre las partes o a plazos, a opción del portador, sujeto a los términos y condiciones del acuerdo, y
>
> (e) el balance adeudado es aumentado por el monto de las transacciones efectuadas por el

portador, más los cargos por financiamiento computados a tenor con el acuerdo y será reducido por los pagos que efectúe el portador.

El acuerdo de plan de cuenta rotativa para uso de tarjeta de crédito convenido en Puerto Rico entre un emisor autorizado por las leyes de Puerto Rico para emitir tales tarjetas de crédito y el portador de la misma, se regirá por las leyes y reglamentos de Puerto Rico y las leyes y reglamentos federales aplicables, incluyendo, pero sin limitarse a, Truth in Lending Act (15 U.S.C.A. §§ 1601 *et seq.*) y el Reglamento Z adoptado al amparo de la misma, independientemente del lugar de residencia del portador de la misma. (Énfasis suplido). 10 LPRA sec. 766.

Por otro lado, la Oficina del Comisionado de Instituciones Financieras (la "OCIF") es una entidad gubernamental creada en virtud de la Ley Núm. 4 de 11 de octubre de 1985, 7 LPRA sec. 2001 *et seq.*, cuyo propósito principal es el de fiscalizar y supervisar todas las instituciones financieras que operen y hagan negocios en Puerto Rico.

La OCIF administra la Ley 68 y, a tal fin, promulgó el Reglamento Núm. 6070, *Reglamento para Disponer Sobre los Cargos, Tasas de Interés y Otros Asuntos Relativos a Planes de Cuentas Rotativas para Uso de Tarjetas de Crédito y Contratos de Ventas al Por Menor a Plazos*, de 29 de diciembre de 1999 (el "Reglamento"). Parte I, Sec. 1 del Reglamento.

La Sección 3 de la Parte II del Reglamento dispone sobre las solicitudes de crédito bajo un plan de cuenta rotativa para uso de tarjetas de crédito:

Una persona podrá solicitar crédito bajo un plan de cuenta rotativa para uso de una o más tarjetas de crédito por escrito, por vía telefónica o cualquier otro medio electrónico disponible. En caso de solicitudes por vía telefónica o cualquier otro medio electrónico disponible se entenderá que tal acción constituye una solicitud siempre que el emisor mantenga un récord que la evidencia. **El uso por el portador de la tarjeta de crédito se entenderá como su aceptación**. (Énfasis suplido).

Además, la Sección 5 (A) y (B) de la Parte II del Reglamento señala que el emisor de una tarjeta de crédito en planes de cuentas rotativas está obligado a enviar al portador de la tarjeta un estado de cuenta al finalizar cada período de facturación que contendrá toda la información requerida por el *Truth in Lending Act* y el Reglamento Z, adoptado al amparo de la legislación federal pertinente.

IV.

Concluimos que erró el TPI al concluir que la Demanda no contiene una causa de acción viable.

El Banco alegó que el Deudor solicitó una tarjeta de crédito, que el Banco la emitió, que el Deudor la utilizó y que el Deudor no ha realizado los pagos correspondientes bajo los términos de la Tarjeta. En esta etapa, el TPI estaba obligado a considerar como ciertas estas alegaciones. Las mismas claramente establecen una causa de acción viable. Contrario a lo que sugiere el Deudor, el Banco no tenía que incluir en la Demanda la fecha en que se solicitó la Tarjeta, ni las fechas en que el Deudor la utilizó. Adviértase que las alegaciones son suficientes si advierten razonablemente, y a grandes rasgos, a la otra parte sobre la razón de pedir y la naturaleza del remedio solicitado. Ello ocurrió en este caso.

Salvo que el Banco solicite la resolución sumaria de la Demanda, lo cual no ha ocurrido, no tiene pertinencia el criterio del TPI o del Deudor, en torno a la suficiencia de los documentos hasta ahora presentados por el Banco al TPI. Es en caso de solicitarse por el Banco la resolución sumaria de la Demanda que le correspondería al TPI evaluar la totalidad de los documentos y declaraciones que **en ese momento** se acompañen para determinar si procede dicha solicitud. En esta etapa, sin embargo, lo único pertinente eran las alegaciones de la Demanda, las cuales el TPI estaba obligado a considerar como ciertas.

En cualquier caso, resaltamos que, de conformidad con las normas arriba reseñadas, (i) una tarjeta de crédito puede solicitarse por teléfono o por un medio electrónico y (ii) el uso de la tarjeta de crédito implica un acto de aceptación de los términos y condiciones notificados por el emisor de la tarjeta. Por tanto, como cuestión de derecho, un contrato relacionado con una tarjeta de crédito puede perfeccionarse y, por tanto, tener efecto vinculante entre las partes, aunque no exista un contrato escrito firmado por ambas partes.

V.

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y consignado.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones